# EXHIBIT "A"

BALBOA CAPITAL
A DIVISION OF AMERIS BANK

# EQUIPMENT FINANCING AGREEMENT ("Agreement")

**Agreement # 226015-001**

## DEBTOR INFORMATION

| Debtor Name: | Debtor's Address: | Collateral Location: (if different from Debtor's Address) |
|---|---|---|
| **Blaze Trucking LLC**<br>Phone: [redacted] Federal Tax ID #: [redacted] | **8468 Oak Knoll St**<br>**Fogelsville, PA 18051** | **859 Trexlertown Road**<br>**Allentown, PA 18106** |

## PAYMENT AND TERMS

| Full Description of Collateral (Include Make Model, Serial Numbers) | Collateral Cost: | Initial Payment (Debtor requests that this amount be electronically debited) |
|---|---|---|
| **"See Exhibit A1 attached hereto and incorporated herein by this reference."** | **$160,905.16** | Fee $: **$809.00 (financed)** |
| Term: **60 months** (Plus any Prefund or Per diem Period)<br>Monthly Payment Amount: **$3,398.10** | **Initial Payment Date:** 07/02/2022 | **Total Amount Due:** **$0.00** |

Copy of Original

### TERMS OF EQUIPMENT FINANCING AGREEMENT

Balboa Capital Corporation ("Creditor") and Debtor agree as follows:

**1. SECURITY INTEREST:** Debtor hereby grants Creditor a security interest under the Uniform Commercial Code in the above property and equipment (collectively the "Collateral" and individually an "Item of Collateral"). Such security interest is granted to secure performance by Debtor of its obligations hereunder and under any other present or future agreement with Creditor. Debtor shall insure that such security interest is and shall remain a sole first lien security interest. DEBTOR HEREBY AUTHORIZES CREDITOR TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS CREDITOR OR ITS DESIGNEE AS DEBTOR'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON DEBTOR'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.

**2. COMMENCEMENT DATE:** This Agreement shall commence upon verification of the delivery of the Collateral in a form acceptable to Creditor ("Commencement Date").

**3. NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OR INTERMEDIARY NOR ANY AGENT OF EITHER THEREOF IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. ***THE SUPPLIER IS NOT AN AGENT OF CREDITOR'S AND NOTHING THE SUPPLIER STATES CAN AFFECT DEBTOR'S OBLIGATION UNDER THIS AGREEMENT. DEBTOR WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER.***

**4. PAYMENTS; PER DIEM EXPENSE REIMBURSEMENT:** Debtor shall repay Creditor the above Monthly Payments in the number of monthly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .03333% of the Monthly Payment calculated from number or days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above.** All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments, which are the first and last Monthly Payments, shall be applied to the last Monthly Payment in reverse order until exhausted; provided that if there is a default, any payments under this Agreement may be applied to the Obligations at Creditors discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

Initials GB

5. **NON CANCELABLE AGREEMENT;** NO PREPAYMENT, NO OFFSET, THIS AGREEMENT IS NON CANCELABLE BY DEBTOR FOR ANY REASON WHATSOEVER. DEBTOR MAY REPAY THE MONTHLY PAYMENTS ONLY IN ACCORDANCE HEREWITH. ALL PAYMENTS HEREUNDER ARE TO BE MADE WITHOUT OFFSET.

6. **FINANCING.** THIS AGREEMENT IS SOLELY A COMMERCIAL AND BUSINESS FINANCING AGREEMENT. SEE ADDITIONAL TERMS AND CONDITIONS CONTAINED HEREIN WHICH ARE PART OF THIS AGREEMENT.

7. **NO WARRANTIES. CREDITOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, REGARDING THE COLLATERAL AND ITS FITNESS, MERCHANTABILITY OR PROFITABILITY FOR ANY PURPOSE WHATSOEVER.** DEBTOR AGREES THAT DEBTOR HAS SELECTED THE SUPPLIER AND EACH ITEM OF COLLATERAL BASED UPON DEBTOR'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY CREDITOR. CREDITOR DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE COLLATERAL.

8. **LOCATION; INSPECTION; USE.** Debtor shall keep, or, as to an Item of Collateral which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Debtor's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Creditor, Upon request, Debtor shall advise Creditor as to the exact location of an Item of Collateral. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner an in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturer's instructions and warranty requirements.

9. **ALTERATIONS; SECURITY INTEREST COVERAGE.** Without Creditor's prior written consent, Debtor shall not make any alterations, additions or improvements to an Item of Collateral which detract from its economic value or functional utility. All additions and improvements made to an Item of Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Creditor's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without Creditor's prior written consent.

10. **MAINTENANCE.** Debtor shall maintain the Collateral in good repair, condition and working order. Debtor shall cause at its sole expense all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Debtor will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity.

11. **LOSS AND DAMAGE; CASUALTY VALUE.** In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Debtor shall give Creditor prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Creditor to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Debtor shall cause the Collateral to be replaced and shall immediately provide Creditor with information necessary to perfect Creditor's security interest in the replacement Collateral, or shall pay Creditor the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future Monthly Payment due with respect to such Item discounted at three percent (3%) per annum simple interest from the date due to the date of such payment.

12. **PAYMENT OF OBLIGATIONS:** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in section #14, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or on which Debtor's deposit check was drawn, or the account from which a cancelled or voided check provided by the Debtor can be drawn, or any other account from which Debtor paid any Obligation under this Agreement. **Debtor initiates each transaction** and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in section #14, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. If Debtor would prefer to authorize Creditor to debit another account, fill in the blanks provided below along with a copy of a voided check from the specified account. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable.

Bank Name: [redacted] Bank City, State: [redacted]

Account No: [redacted] ABA Routing No: [redacted]

Business Name on Account: [redacted]

Street Address on Account: [redacted] City, State on Account: [redacted]

Initials: GB sign

Copy of Original



EFA244O

The original document is owned by Balboa Capital Corporation and this copy was created on May 04, 2022 10:27:53 AM.

13. **TITLING.** If requested by Creditor, Debtor shall cause an Item of Collateral subject to title registration laws to be titled as directed by Creditor. Debtor shall advise Creditor promptly as to any necessary re-titling. Debtor shall cause all documents of title to be furnished Creditor within sixty (60) days of the date of any titling effected by Debtor. All expenses, fees, costs and charges associated with re-titling to secure Creditors perfected lien rights shall be borne solely by Debtor and reimbursed to Creditor by Debtor.;

14. **TAXES, CHARGES, AND FEES.** Debtor agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees that levied by any State, County or Federal Agency relating to this Agreement or the Collateral. If Creditor pays any of the above taxes on behalf of the Debtor, so as to reimburse Creditor for processing and administrative expenses and time, Debtor will pay a processing fee for each payment. In addition, Debtor also agrees to pay Creditor any UCC filing fees mandated by the Uniform Commercial Code or other law to protect and secure the Collateral and reimburse Creditor for all costs and expenses involved in documenting and servicing this transaction. An inspection of the Collateral will be conducted to evidence the condition of the Collateral and a fee will be charged for this service, which Debtor agrees to reimburse to Creditor. Debtor further agrees to pay Creditor an origination or loan Fee on or before the date the first Monthly Payment is due, the purpose of this fee is to arrange in advance all the necessary funding sources and process credit and paperwork. Debtor also acknowledges that all such fees and charges are in addition to the Monthly Payments, and that all such fees may not only cover Creditors costs but they may also include a profit or administrative expense reimbursement of processing.

15. **INSURANCE**. Debtor agrees to maintain, at Debtor's expense, "Special Form" property insurance protecting the Collateral for its full replacement value, **naming Creditor as a loss payee on a "Creditor's Loss Payable" endorsement**; and public liability insurance, in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance within thirty (30) days of the commencement date of this Agreement or of any subsequent written request. If Debtor does not do so, Creditor may obtain insurance from an insurer of Creditor's choosing in such forms and amounts as Creditor selects ("Insurance"). Insurance covers the Collateral and Creditor only and not Debtor. Debtor shall pay Creditor periodic charges for Insurance ("Insurance Charges") that include: a premium that may be higher than if Debtor maintained Required Insurance separately; a finance charge of up to the implicit rate of this Agreement on any premium advances made by Creditor or Creditors agents; and billing and processing fees; each of which may generate a profit to Creditor and Creditor agents. If Debtor fails to pay billed Insurance Charges within 30 days of their due date, Creditor may pay them by applying funds paid under this Agreement or debiting Debtor's account under any previously authorized payment. At Creditor's election, in lieu of obtaining or continuing Insurance, Creditor may require Debtor to pay a monthly additional fee up to 2% of the Collateral Cost. This fee is not only calculated with reference to additional risk and constitutes additional profit for Creditor, but represents the basis on which Creditor is willing to forbear from exercising remedies and continue this Agreement without Required Insurance. Debtor will receive no insurance coverage and will not be released from any obligations. **Creditor is not selling insurance.** Creditor will cease charging the additional fee or billing for Insurance 30 days after Debtor provides satisfactory proof of Required Insurance and compliance with this section.

16. **CREDITOR'S PAYMENT.** If Debtor fails to perform any of its obligations hereunder, Creditor may perform such obligation, and Debtor shall (a) reimburse Creditor the cost of such performance and (b) pay Creditor the service charge contemplated in paragraph 14.

17. **INDEMNITY.** Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Creditor related to this Agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

18. **DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder, within three (3) business days of when due; (b) Debtor's default in performing any other obligation hereunder or under any agreement between Debtor and Creditor; (c) death or judicial declaration of competency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of debtors, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Debtor for the benefit of creditors, appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) as to a guarantor or other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Debtor; (h) Debtor's default under a lease or agreement providing financial accommodation with a third party or (i) Creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise.

19. **REMEDIES.** Upon the occurrence of an event of default Creditor shall have the right, options, duties and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Monthly Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or

Initials GB sign

Copy of Original

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.


expenses paid or incurred by Creditor in connection with the repossession holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (b) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Debtor; (c) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (d) require Debtor to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (e) upon notice to Debtor required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Creditor's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Debtor hereunder with Debtor remaining liable for any deficiency and with any excess being returned to Debtor or (f) utilize any other remedy available under the Uniform Commercial code or otherwise to Creditor. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Creditor may, if permitted by law, bid at any such sale.

**20. LITIGATION EXPENSES.** Debtor shall pay Creditor its costs and expenses not offset as provided in paragraph 19, including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this Agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed.

**21. ASSIGNMENT.** Without the prior written consent of Creditor, Debtor shall not sell, lease or create or allow any lien other than Creditor's security interest against an Item of Collateral or assign any of Debtor's obligations hereunder. Debtor's obligations are not assignable by operation of law. Consent to any of the foregoing applies only in the given instance. Creditor may assign, pledge or otherwise transfer any of its rights **but none of its obligations** hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor, and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor. Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

**22. PERSONAL PROPERTY.** Debtor shall mark the Collateral or its location as requested by Creditor to indicate Creditor's security interest. As between the parties the Collateral shall at all times be deemed personal. Debtor will provide Creditor any real property waivers requested by Creditor as to the real property where an Item of Collateral is or is to be located.

**23. LATE PAYMENT.** If Debtor fails to pay any amount to be paid hereunder within three (3) days of when due, Debtor agrees to pay us (a) eighteen percent (18%) of each such late payment (to the extent permitted by law) (b) amounts Creditor pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month.

**24. SECURITY INTEREST RELEASE.** At such time as there is no outstanding obligation secured hereby (including obligations under other agreements contemplated under paragraph 1), Creditor shall provide Debtor such termination statements related to the Collateral as Debtor shall reasonably request. Debtor shall be responsible for the filing of each such UCC3 termination statement at its expense.

**25. ADDITIONAL DOCUMENTS.** Debtor shall provide to Creditor such financing statements and similar documents as Creditor shall request. Debtor authorizes Creditor, where permitted by law, to make filings of such documents without Debtor's signature. Debtor shall reimburse Creditor for all search and filing fees incurred by Creditor related hereto.

**26. NOTICES.** Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices will be deemed given when deposited in the U.S. mail, postage prepaid, first class mail; when delivered in person; or when sent by registered mail; by certified mail; or by nationally recognized overnight courier. Notice to Debtor will be sent to Debtor's last known address in Creditor's records for this Loan. Notice to Creditor may be sent to, Balboa Capital Corporation, 575 Anton Blvd, 12th Floor, Costa Mesa CA 92626.

**27. GENERAL. This Agreement as well as the delivery and acceptance receipt(s) for the Collateral constitute the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing. This Agreement cannot be modified except in writing signed by the party**

Initials GB sign

Copy of Original


EFA244O
The original document is owned by Balboa Capital Corporation and this copy was created on May 04, 2022 10:27:53 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.



against who enforcement is sought. **Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.** Any waiver by Creditor must be in writing, and forbearance shall not constitute a waiver. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Debtor shall survive the release of the security interest in the Collateral.

**28. DEBTOR'S WARRANTIES.** DEBTOR CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY DEBTOR SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NONWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

**29. GOVERNING LAW (EXCLUSIVE AND MANDATORY TO CALIFORNIA).** Our relationship (including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement) will be exclusively governed by, and this Agreement will be exclusively construed in accordance with California law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be exclusively governed by such laws.

**30. CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement, or any action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California, Santa Ana Division. Debtor understands and agrees that (i) Creditor is located in Costa Mesa, California, (ii) Creditor makes all credit decisions from Creditor's office in Costa Mesa, California, (iii) this Agreement is made and deemed to be performed in Costa Mesa, California (that is, no binding contract will be formed until Creditor receives and accepts Debtor's signed Agreement in Costa Mesa, California) and (iv) Debtor's payments are not accepted until received by Creditor in Costa Mesa, California. Creditor, at its sole discretion, may commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.

**31. COUNTERPARTS AND FACSIMILE SIGNATURES.** If this Agreement was sent electronically, Debtor hereby warrants that this Agreement has not been altered in any way. Any alteration or revision to any part of this Agreement or any attached documents will make all alterations or revisions non-binding and void. Only one counterpart of this Agreement and of each Schedule, Addenda, or Exhibit attached hereto shall bear our signature and shall be marked "Original". To the extent that any Equipment Financing Agreement, Schedule, Addenda or Exhibit hereto constitute chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may only be created in this Agreement, Schedule, Addenda or Exhibit that bears our signed signature and is marked "Original". This Agreement and any documents pertaining to this Agreement may be executed in counterparts. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.

Copy of Original

| (CREDITOR) | (DEBTOR) |
| --- | --- |
| **Balboa Capital Corporation**<br>**575 Anton Blvd**<br>**12th Floor**<br>**Costa Mesa, CA 92626** | **Blaze Trucking LLC**<br>**8468 Oak Knoll St**<br>**Fogelsville, PA 18051** |
| By: *Matthew Cevallos* | sign By: *Gregory Blaise* |
| Vice President | Name: Gregory Blaise<br>Title: Managing Member |
| Date: 05/04/2022 | Date: 05/04/2022 Home Phone: [redacted] |



The original document is owned by Balboa Capital Corporation and this copy was created on May 04, 2022 10:27:53 AM.

# EXHIBIT "B"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.


BALBOA CAPITAL
A DIVISION OF AMERIS BANK

# PERSONAL GUARANTY

**Equipment Financing Agreement # 226015-001**

**THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.** When we use the words **you** and **your** in this Personal Guaranty, we mean the **Personal Guarantor (s)** indicated below. When we use the words **we, us** and **our** in this Personal Guaranty, we mean **BALBOA CAPITAL CORPORATION,** its successors and assigns.

In consideration of our entering into the equipment financing agreement above ("EFA"), you unconditionally and irrevocably guarantee to us, our successors and assigns, the prompt payment and performance of any and all obligations of the Customer ("Debtor") under the EFA and any other financial transaction of any kind whatsoever, whether now existing or hereafter arising with us. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Debtor or against the Equipment covered by the EFA or against any collateral or security held by us. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the EFA and you will be bound by such changes. If the Debtor defaults under the EFA, you will immediately perform all obligations of the Debtor under the EFA, including, but not limited to, paying all amounts due under the EFA. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Debtor. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Debtor in the event you pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

**THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU CONSENT TO THE JURISDICTION OF THE COUNTY OF ORANGE IN THE STATE OF CALIFORNIA. YOU HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY.**

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

Copy of Original

sign X eSigned By: Gregory Blaise May 04, 2022 5:53:17 AM PDT

**Gregory Blaise** 05/04/2022
**Name** **Date**

[redacted]
**Home Street Address, City, State, Zip Code**

[redacted] [redacted]
**Social Security Number** **Phone Number**

EFA251

The original document is owned by Balboa Capital Corporation and this copy was created on May 04, 2022 10:27:54 AM.